Filed 3/19/14  Wizard Gaming v. Joshi CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WIZARD GAMING, INC., | B248174 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC490596) |
| v. | |
| CHANDER JOSHI, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Reversed with directions.

David M. Bass & Associates, Inc., David M. Bass and Michael D. Murphy for Plaintiff and Appellant.

Quinlan, Kershaw & Fanucchi and Edward L. Fanucchi for Defendant and Respondent.

————————————

# INTRODUCTION

Plaintiff Wizard Gaming, Inc. (Wizard) appeals from an order of dismissal entered after the trial court sustained defendant Chander Joshi's demurrer to Wizard's first amended complaint without leave to amend. Wizard contends that the complaint stated a cause of action against Joshi for aiding and abetting a breach of fiduciary duty, and that the claim is not barred by the statute of limitations. We agree and reverse.

# FACTS[1]

Wizard is a California corporation that operates a casino, Diamond Jim's, in Rosamond, California. Its original shareholders were Zephyr Inter Vivos Trust (Zephyr), which owned 41.95 percent of Wizard shares; Emily Jean Cuicchi (Cuicchi), 28.525 percent; George Deitch, 14.5 percent; Fred Revuelta, 7 percent; Richard Levinson, 5.025 percent; and Darryl Shirwo, 3 percent.

Zephyr is a revocable California trust established in 1999 by George Hardie, Jr. (Hardie). Robert Cuicchi, Cuicchi's husband, was the trustee of Zephyr as well as Wizard's president and chairman of the board until his death in 2005. At Hardie's request, Cuicchi became Zephyr's trustee after her husband's death. She thus controlled 70.475 percent of Wizard's shares and became Wizard's president and chairman of the board.

The individual shareholders had been minority shareholders in the Bicycle Club, a casino in Bell Gardens, which George Hardie, Sr. had established. The shareholders formed Wizard for the purpose of purchasing a majority interest in the Bicycle Club.

---

[1]     On demurrer, "we must accept as true all properly pleaded material facts and facts that may be inferred from these allegations, but we do not accept the truth of contentions, deductions or conclusions of law." (*Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1411; see *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1374.)

When they were unsuccessful, they purchased another casino, which they renamed Diamond Jim's.[2]

On September 14, 2006 the California Gaming Control Commission (CGCC) granted gambling licenses to Zephyr, Cuicchi, Deitch, Revuelta, and Shirwo. On December 7, 2006 the CGCC granted a conditional license to Hardie, on the conditions that he not have any control over Wizard or Diamond Jim's and that he receive income from Diamond Jim's only as a beneficiary of Zephyr. Cuicchi subsequently expressed her desire to oust Zephyr as a shareholder and increase her ownership interest in Wizard.[3]

Joshi was a consultant for Wizard and its "Designated Agent." He represented Wizard before the CGCC and the California Department of Justice Bureau of Gambling Control. Cuicchi used Joshi in an attempt to have Zephyr's gambling license revoked as part of her scheme to gain control of Wizard. For example, she had Joshi hire investigators to inquire into the ownership of a casino in Belize, owned by Hardie, Sr., where Hardie was employed, in an attempt to obtain information that would undermine Hardie's conditional license in California. Joshi also provided instructions to Isaacman, Kaufman & Painter, a law firm that Cuicchi hired on behalf of Wizard to help her oust Zephyr.

Joshi knew of Cuicchi's scheme to use Wizard's funds to replace Zephyr. He also knew that the use of Wizard's funds by its officers or directors to oust a shareholder constituted a breach of their fiduciary duties to the corporation. Nevertheless, he participated in Cuicchi's scheme and provided her with substantial assistance.

From 2008 through 2011, Joshi "took the position, based upon false facts, that Zephyr is a sham instrument designed to provide . . . George Hardie, Sr., an unlicensed

---

[2]    The attorney general sued George Hardie, Sr. for gambling license violations and, as part of a consent decree, Hardie, Sr. agreed to sell the Bicycle Club and not to apply for another gambling license for a period of time. As a result, he did not invest in Diamond Jim's.

[3]    Wizard believed that Cuicchi took action that caused the CGCC to issue a conditional license to Hardie as part of her plan to take control of Wizard.

3

person, 'control' over Wizard." Joshi "actively advocated for Zephyr's shares to be stripped from Zephyr and sold to the current shareholders." He "actively pursued challenges" to Hardie's California gambling license "based upon false facts, including, but not limited to, the allegation that [Hardie] owned a greater percentage of a Casino in Belize than is permitted under California law." Joshi discussed with Cuicchi and Levinson how to amend Wizard's bylaws to ensure that Zephyr's shares would be returned to the current shareholders once Cuicchi was able to remove Zephyr from Diamond Jim's. Joshi received excessive compensation from Wizard "in exchange for his aiding and abetting . . . Cuicchi's scheme to oust Zephyr." He received compensation of $13,500 per month—almost four times the reasonable value of his services—and in August 2006 Wizard forgave $220,000 of a $300,000 loan Wizard had made to Joshi.

As a result of the actions taken as part of Cuicchi's scheme to oust Zephyr, Wizard suffered monetary damages in excess of $1 million. Cuicchi used Wizard's money to fund her scheme, and Wizard's net profits dropped significantly.

In 2008 Hardie terminated Cuicchi as trustee of Zephyr and appointed Deitch to replace her. In May 2010, Joseph Etienne, a professional fiduciary, became a co-trustee of Zephyr. In April 2011 Wizard expanded its board from four to five members, and the shareholders elected Etienne to the board. At the annual shareholders' meeting in May 2011 the shareholders elected Etienne chairman of the board. In June 2011 Cuicchi resigned as Wizard's president, and Etienne replaced her.

Meanwhile, in May 2008 Deitch filed a derivative action against Cuicchi and Levinson for breach of their fiduciary duties to Wizard. In September 2011 the parties executed a "Standstill and Tolling Agreement" providing that "'any claims arising from the facts alleged in the . . . Derivative Action that are re-filed by Deitch or filed by Wizard in a subsequent action will relate back to the date that the original action was first filed, for the purpose of calculating the statute of limitations.'" The parties subsequently extended the tolling period to June 30, 2012.

4

## PROCEDURAL BACKGROUND

On August 20, 2012 Wizard filed this action against Cuicchi, Levinson, and Joshi. The only cause of action against Joshi was for aiding and abetting Cuicchi and Levinson's breach of fiduciary duty and corporate waste and mismanagement. Joshi demurred on the ground the action was barred by the statute of limitations. Following a hearing, the trial court sustained the demurrer "with a one time chance to amend, the court seeing no independent duty owed or fiduciary bond etc."

Wizard then filed its operative first amended complaint, alleging a cause of action for breach of fiduciary duty against Joshi. Joshi again demurred based on the statute of limitations. He also argued that Wizard failed to allege an actionable breach of fiduciary duty and exceeded the scope of leave to amend granted by the trial court.

The trial court sustained Joshi's demurrer without leave to amend. The court stated: "Basically, the complaint alleges he as an employee (or contract worker, the complaint is not clear) did what he was asked to do by the officers of the corporation under whom he served. The conduct complained [of] on his part really boils down to a claim of 'conspiracy' or aiding by 'taking a position' . . . , 'actively advocating' . . . , 'actively pursuing,' and 'participating in discussions.' . . . Such conduct is not actionable. There is also no fiduciary duty to the shareholders of the corporation, and, at the least, to the one shareholder purportedly the subject of complained of acts. . . ."

The trial court dismissed the action against Joshi. Wizard filed a timely notice of appeal.

## DISCUSSION

A.    *Standard of Review*

"'The standard of review on an appeal from judgment of dismissal following sustaining of a general demurrer is guided by long settled rules. We treat the demurrer as admitting all material facts properly pleaded, as well as those which reasonably arise by

5

implication, but not contentions, deductions or conclusions of fact or law. [Citations.] "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." [Citation.] . . . "'[T]he allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.'" [Citation.] A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. [Citation.]' [Citation.] Consequently, '[t]he reviewing court assumes the truth of [the] allegations in the complaint that have been properly pleaded . . . . [Citations.]' [Citation.]" (*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 309-310.)

We "'first review[] the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law.' [Citation.] 'Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend.' [Citation.]" (*Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 826.)

B.    *Aiding and Abetting a Breach of Fiduciary Duty*

Contrary to the implications of the trial court's ruling, liability for aiding and abetting a breach of fiduciary duty may be imposed even in the absence of a fiduciary duty on the part of the aider and abettor. "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. "'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." [Citations.]' [Citation.]" (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144; accord, *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846.) California courts have consistently followed and

6

applied this two part alternative test for civil aiding and abetting liability. (See, e.g., *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 741, 744-745; *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1559.) Under the first prong of the test, the defendant need not owe an independent duty to the plaintiff. Rather, the focus is "'"on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct . . . ."'"" (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823, fn. 10.) Thus, a defendant can be liable for aiding and abetting a breach of fiduciary duty even if the defendant does not owe a fiduciary duty to the plaintiff. (See *Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 127; *Simi Management Corp. v. Bank of America, N.A.* (N.D.Cal. 2013) 930 F.Supp.2d 1082, 1099, fn. 15; *Villains, Inc. v. American Economy Ins. Co.* (N.D.Cal. 2012) 870 F.Supp.2d 792, 795; *Neilson v. Union Bank of California, N.A.* (C.D.Cal. 2003) 290 F.Supp.2d 1101, 1135.)

In order to state a claim for aiding and abetting, "'[t]he California Supreme Court has consistently held that "a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. [Citation.]"'" (*Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 95; see *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245.) Wizard alleged the essential facts of its case against Joshi with sufficient precision and particularity to state a claim against Joshi for aiding and abetting a breach of fiduciary duty by Cuicchi.

First, Wizard pleaded a breach of fiduciary duty by Cuicchi. "It is hornbook law that directors . . . are fiduciaries, and bear a fiduciary relationship to the corporation, and to all the stockholders. They owe a duty to all the stockholders . . . and must administer their duties for the common benefit. . . . Directors owe a duty of highest good faith to the corporation and its stockholders. It is a cardinal principle of corporate law that a director cannot, at the expense of the corporation, make an unfair profit from his position.'" (*Busse v. United PanAm Financial Corp.* (2014) 222 Cal.App.4th 1028, 1047, fn. 19.) "[A director] is precluded from receiving any personal advantage without fullest

7

disclosure to and consent of *all* those affected." (*Remillard Brick Co. v. Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 419; see *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 70 [actions taken for the fiduciary's "personal benefit" breached fiduciary duties to employer]; *Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 437 [attorney breached fiduciary duties by trying to "sell out" clients "for personal gain"].) Wizard alleged that Cuicchi engaged in conduct for her personal benefit, not for the benefit of the corporation and all of its shareholders.

Second, Wizard stated a cause of action for aiding and abetting a breach of fiduciary duty against Joshi under the first prong of the test: knowing Cuicchi's conduct constituted a breach of duty and giving her substantial assistance or encouragement to so act. Wizard alleged that "Joshi possessed actual knowledge of the fiduciary duties owed by a Wizard corporate director and officer," "knew that the use of Wizard funds to oust a shareholder of the corporation constitutes a breach of duties owed by a corporate officer and/or corporate director," "possessed actual knowledge of . . . Cuicchi's intent, plan and scheme to use Wizard funds for the purpose of ousting Wizard's largest shareholder, the Zephyr Trust," and "actively participated in, provided substantial assistance to, and encouraged the scheme of . . . Cuicchi to use Wizard funds and resources to oust Zephyr as a shareholder to the corporation." Wizard further alleged that Joshi "actively pursued challenges to the license of the Zephyr beneficiary (which, if successful, would have vitiated the Zephyr license and ownership of Wizard shares), based upon false facts," and discussed with Cuicchi and Levinson mechanisms that would enable them "to personally benefit from the injuries suffered by Zephyr."

Citing *Schulz v. Neovi Data Corp.*, *supra*, 152 Cal.App.4th 86, Joshi argues that "[a]ccepting payment from a tortfeasor for rendering services within the scope of one's authorized retention and business is not an act of aiding and abetting," and that Wizard's allegations are that Joshi "was doing nothing more than exactly what he had been hired and instructed by Wizard and its corporate officers to do." *Schulz*, however, is distinguishable.

8

In *Schulz*, the plaintiff alleged that the defendants, who processed online payments, aided and abetted EZ Expo's operation of an illegal online lottery. The court held that the plaintiff's allegations that two of the named four defendants knew EZ Expo's website was an illegal lottery but allowed EZ Expo to use the defendants' payment systems were insufficient to state a claim for aiding and abetting against those two defendants. (*Schulz v. Neovi Data Corp.*, *supra*, 152 Cal.App.4th at p. 97.) The court held that these allegations did not sufficiently allege the defendants' "knowledge of the alleged illegal lottery or facts showing 'substantial assistance or encouragement.'" (*Ibid.*)

In contrast, Wizard's allegations sufficiently alleged the knowledge element of an aiding and abetting claim. Wizard alleged that Joshi "possessed actual knowledge of" Cuicchi's breach of fiduciary duty and "actively participated in, provided substantial assistance to, and encouraged the scheme of . . . Cuicchi to use Wizard funds and resources to oust Zephyr as a shareholder to the corporation." Wizard specifically alleged that Joshi "actively pursued challenges to" Hardie's license "based upon false facts" in order to enable Cuicchi to oust Zephyr as a shareholder, and that Joshi discussed with Cuicchi and Levinson mechanisms that would enable them "to personally benefit from the injuries suffered by Zephyr." Contrary to Joshi's assertion, Wizard did not merely allege that Joshi accepted "payment from a tortfeasor for rendering services within the scope of one's authorized retention and business," as the plaintiff had alleged in *Schulz*. Wizard alleged that Joshi received excessive compensation from Wizard "in exchange for his aiding and abetting . . . Cuicchi's scheme to oust Zephyr," over and above compensation for his services to Wizard. Joshi's alleged actions were more akin to those of the other two defendants in *Schulz*, who contracted with EZ Expo "for use of their services to encourage participation [in the illegal lottery to] make more money" for themselves, and against whom the court held the plaintiff had stated a claim for aiding and abetting. (*Schulz v. Neovi Data Corp.*, *supra*, 152 Cal.App.4th at p. 96.) Thus, *Schulz* supports Wizard, not Joshi.

9

C.      *Statute of Limitations*

In general the limitations period on a cause of action for aiding and abetting a tort is the same as the underlying tort.  (See *Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 743-744 & fn. 4.)  Thus, the statute of limitations for aiding and abetting a breach of fiduciary duty is the same as the statute of limitations for breach of fiduciary duty.  (See *In re Brocade Communications Systems, Inc. Derivative Litigation* (N.D.Cal. 2009) 615 F.Supp.2d 1018, 1036-1037.)

Joshi states that the "statute of limitations on a cause of action for aiding and abetting breach of fiduciary duty is the four year period provided in Code of Civil Procedure [section] 343," and that the "statute of limitations for Wizard's claims of aiding and abetting corporate waste and mismanagement appear[s] to be either 3 years under Code of Civil Procedure [section] 359 or 4 years under Code of Civil Procedure [section] 343."[4]  Joshi argues that "[i]n any event, even using the longest period of 4 years, Wizard's claim against [him] is time barred . . . ."  Joshi contends that Wizard knew or should have known of the existence of its cause of action against him as of May 2008, when Deitch filed the derivative action against Cuicchi and Levinson for breach of

---

[4]     The statute of limitations for breach of fiduciary duty is actually three years or four years, depending on whether the breach is fraudulent or non-fraudulent.  (See *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 963 ["limitations period is three years . . . for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply"]; *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1312 ["[b]reach of fiduciary duty not amounting to fraud or constructive fraud is subject to the four-year 'catch-all statute' of Code of Civil Procedure section 343"]; *Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606-607 [same]; *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889 [four-year statute of limitations applies to breach of fiduciary duty, unless the gravamen of the claim is actual or constructive fraud, in which case the statute of limitations is three years].)  Joshi does not argue that the three-year statute of limitations applies, or that if it does, Wizard's claim for aiding and abetting is barred by the three-year statute of limitations.

10

fiduciary duty.  Wizard did not file this action until August 2012, more than four years later.

"'A complaint disclosing on its face that the limitations period has expired in connection with one or more counts is subject to demurrer.  [Citation.]'  [Citation.]" (*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1250.)  However, "[a] demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred.  [Citation.]  In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]"  (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403; accord, *Stueve Bros. Farms, LLC v. Berger Kahn*, *supra*, 222 Cal.App.4th at p. 313.)

The statute of limitations generally "'runs from the moment a claim accrues. [Citations.]  Traditionally at common law, a "cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." [Citation.]  This is the "last element" accrual rule: ordinarily, the statute of limitations runs from "the occurrence of the last element essential to the cause of action." [Citations.]'  [Citation.]  [¶]  'An important exception to the general rule of accrual is the "discovery rule . . . ."'  [Citation.]  '"A cause of action under this discovery rule accrues when '"plaintiff either (1) actually discovered his injury and *its . . . cause* or (2) could have discovered injury and *cause* through the exercise of reasonable diligence [italics added]."'  [Citation.]  The limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry. . . .'"  [Citation.]" (*Alexander v. Exxon Mobil*, *supra*, 219 Cal.App.4th at pp. 1250-1251.)

Wizard does not "dispute that this scheme <u>originated</u> prior to August 20, 2008— four years before [the] initiation of this action," or even that it discovered the existence of a cause of action against Joshi by May 2008, when Deitch filed the prior action against Cuicchi and Levinson.  Wizard instead relies on the allegations that the scheme continued after Cuicchi's termination as trustee of Zephyr in 2008 until her resignation as Wizard's

president in June 2011.  Wizard argues that therefore the continuous accrual theory applies.

The continuous accrual "theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance.  In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated."  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198.)  "To address these concerns, [it has been] long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations."  (*Ibid*.)

"Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation:  'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' [Citation.]  Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery."  (*Aryeh v. Canon Business solutions, Inc.*, *supra*, 55 Cal.4th at p. 1199.)  Where continuous accrual applies, however, the plaintiff may only recover "damages arising from those breaches falling within the limitations period. . . .  '[T]he continuing accrual rule effectively limits the amount of retroactive relief a plaintiff or petitioner can obtain to the benefits or obligations which came due within the limitations period.'  [Citation.]"  (*Id.* at p. 1199, fn. omitted.)  Therefore, if the continuous accrual theory applies, it would allow Wizard to sue Joshi for aiding and abetting, "but only for those discrete acts occurring within the four years immediately preceding the filing of [its] suit."  (*Id*. at p. 1200.)

The continuous accrual theory applies here.  Wizard has alleged a wrongful course of conduct consisting of individual acts, each of which was independently actionable, some of which occurred within three or four years of the filing of this action.  Wizard

12

alleged that Cuicchi engaged in acts constituting a breach of her fiduciary duties to Wizard until 2011, when she was replaced as board chairman and resigned as Wizard's president. Wizard also alleged that Joshi took actions that aided and abetted Cuicchi "[f]rom 2008 through 2011," including challenging Hardie's license in an effort to oust Zephyr as a shareholder and advising Cuicchi and Levinson regarding how they could benefit personally from Zephyr's removal. As to those acts occurring within the limitations period, the action is not barred by the statute of limitations. Therefore, the trial court erred in sustaining Joshi's demurrer based on the statute of limitations.

Finally, Joshi argues that the statute of limitations bars Wizard's aiding and abetting claim because "Wizard's amended and original complaints both expressly and specifically allege that any supposedly wrongful acts committed by Mr. Joshi were committed on or before May 22, 2008 . . . ." Neither pleading, however, contains any such allegation. The argument appears to be that (1) Wizard alleged that one of the "facts common to all claims" is that "[t]he allegations at issue" in the 2008 action filed by Deitch "arise from the same nucleus of facts as those at issue in this action";[5] (2) in its original complaint in this action Wizard incorporated this allegation into the fourth cause of action for aiding and abetting by alleging that Wizard "repeats and re-alleges the allegations contained in [all prior paragraphs] of this Complaint, as though fully set forth herein"; (3) in the 2008 derivative action the court allowed Deitch to amend his complaint twice but, pursuant to *California Farm & Fruit Co. v. Schiappa-Pietra* (1907) 151 Cal. 732, 742-743, Deitch could only allege facts "which existed prior to May 22, 2008" without filing a supplemental complaint; (4) in its amended complaint in this action Wizard did not incorporate this allegation into the aiding and abetting cause of action, as Wizard had in the original complaint; and (5) Wizard's omission of the incorporation allegation in the aiding and abetting cause of action of the amended complaint "does not correct the fatal flaw in Wizard's purported claim against Mr. Joshi."

---

**5** The complaint does not specify what the phrase "arise from the same nucleus of facts as those at issue in this action" means.

Joshi's argument is off the mark. Deitch's filing of the prior action was indeed one of the "facts common to all claims" set forth in the introductory paragraphs of both the original and the first amended complaint. Wizard, however, did not try to hide this allegation, allege anything that contradicted it, or omit it from the first amended complaint. (See *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 799 ["'plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false'"]; *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 412 ["'plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers"].) Moreover, although this action and Deitch's prior action may "arise from the same nucleus of fact," this action is not based solely on the same wrongful conduct challenged in Deitch's action. Wizard alleged additional and more recent facts in support of its claims in this action regarding events that occurred after Deitch filed the prior action against Cuicchi and Levinson.

14

## DISPOSITION

The order of dismissal is reversed.  The trial court is directed to vacate its order sustaining Joshi's demurrer without leave to amend and to enter a new and different order overruling the demurrer.  Wizard is to recover its costs on appeal.


SEGAL, J.[*]


We concur:


PERLUSS, P. J.


WOODS, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.